**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carlos J. VELARDE,
Defendant–Appellant.**

**No. 89–3057.**

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1990.

Decided June 11, 1990.

As Amended June 26, 1990.

Richard H. Lloyd, Asst. U.S. Atty., Office of the U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Paul M. Storment, Jr., Storment & Read, Belleville, Ill., for defendant-appellant.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Defendant Carlos Velarde was arrested for operating a motor vehicle with a suspended driver's license. Pursuant to established police procedure, the arresting officer impounded the vehicle, conducted an inventory search, and arranged to have it towed to the police station. During the inventory search, the officer discovered several sealed bags of cocaine in the trunk. The district court denied the defendant's motion to suppress the contraband ruling that the search was a permissible inventory search. Velarde was later convicted by a jury of possessing with intent to distribute cocaine in excess of five kilograms in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii). He appeals the district court's denial of his motion to suppress. We affirm.

## I.

On March 23, 1989, Illinois State Trooper Thomas Oliverio was parked along the median of Interstate 57 in Marion County observing traffic heading north. At about 8:00 a.m., he observed a yellow Cadillac operating without a front license plate, in violation of Illinois law, heading northbound. Oliverio followed the Cadillac and observed the car cut closely in front of another car without using its turn signal to change lanes. At one point the car ran off the travelled portion of the road. Oliverio pulled the Cadillac over to the side of the road to investigate.

While walking towards the vehicle, Oliverio noticed that the dealer plate on the rear of the vehicle had been altered so that a zero appeared to be an eight. He approached the car and asked the driver for his license and proof of ownership. The driver, defendant Carlos J. Velarde, handed the officer his Illinois license and a Florida title which had been signed by the seller but had not been signed by a purchaser. The passenger in the vehicle, the defendant's son Fernando Velarde, presented the officer with an Arizona driver's license. The defendant told the officer that he was delivering the vehicle to a dealership in Illinois. A computer check revealed that both the driver and passenger had suspended licenses.

At that point, Carlos Velarde was advised that he was under arrest for driving with a suspended license. Since there were no licensed drivers to drive the vehicle and the license plate had been altered, Oliverio impounded the vehicle and began the process of having the vehicle towed. Oliverio placed the defendant in the back of the police vehicle and requested a backup. After the second police car arrived, Oliverio approached Fernando Velarde, removed him from the car and advised him that it was going to be towed. When Oliverio asked him whether there were any valu-

ables in the trunk, he responded that the trunk contained "luggage."

Pursuant to established police procedure, Oliverio proceeded to conduct an inventory search of the vehicle before having it towed off the highway to the police station. While searching the passenger compartment, he came across the key to the trunk in the car's open ashtray. Using the key, Oliverio opened the trunk and observed assorted pieces of luggage, miscellaneous items of clothing and a board used to hold the trunk open. He also noticed that the trunk liner had been pulled away from the quarter panel and upon closer inspection, he observed that there were bags containing a white powdery substance, which he believed to be cocaine, lodged behind the liner. He found additional packages of the substance behind the liner on the right side of the trunk. The younger Velarde was then handcuffed and placed under arrest while Oliverio finished conducting the inventory search. After the search was concluded, a tow form was completed and the vehicle was towed to the police station.

On May 18, 1989, the defendant filed a motion to suppress the contraband seized by the Illinois State Police claiming that the search exceeded the scope of a permissible inventory search. The district court denied the motion and the defendant was later convicted by a jury of possession with intent to distribute cocaine in excess of five kilograms in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii). He appeals the denial of his motion to suppress. For the reasons stated below, we affirm.

## II.

Velarde's sole contention is that the district court erroneously denied his motion to suppress the contraband seized during the inventory search. He argues that the search exceeded the scope of a permissible inventory search and became an unreasonable search and seizure in violation of the fourth amendment when the officer searched the locked trunk of the vehicle. He also claims that the search was conducted in bad faith as it was merely a pretext for a broader investigatory search. Ve-

larde requests that we reverse the denial of his motion to suppress, vacate his conviction and grant him a new trial.

■] Our standard of review for Velarde's claim is well settled. The district court's denial of a motion to suppress will not be overturned unless it is clearly erroneous. *United States v. Rush*, 890 F.2d 45, 48 (7th Cir.1989). The government concedes that Oliverio lacked probable cause to search the trunk and that the search can only be supported if it falls within the inventory exception to the fourth amendment warrant requirement as set out in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Opperman*, the Supreme Court held that warrantless inventory searches of impounded vehicles by authorities pursuant to a standard police policy or procedure do not violate the fourth amendment. *See also Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *United States v. Kordosky*, 878 F.2d 991, 993 (7th Cir.1989). The Court identified three bases for permitting inventory searches: to protect the owner's property while it remains in police custody; to protect the police against claims or disputes over lost or stolen property; and to protect the police and the public from potential danger. *Opperman*, 428 U.S. at 368–69, 96 S.Ct. at 3096–97. *See also United States v. Griffin*, 729 F.2d 475, 481 (7th Cir.1984). A warrantless inventory search is constitutionally permissible if (1) the individual whose possession is to be searched has been lawfully arrested, *see Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983), and (2) the search satisfies the fourth amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *Griffin*, 729 F.2d at 481.

■ Velarde concedes that he was lawfully under arrest for driving with a suspended license at the time of the search. Therefore, we need direct our inquiry only towards the reasonableness of the inventory search. "Whether a search and seizure

is reasonable within the fourth amendment depends on the facts and circumstances of each case ..." *Cooper v. California*, 386 U.S. 58, 59, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967). In determining the reasonableness of an inventory search, we must be careful to balance the intrusion on the individual's fourth amendment rights against the promotion of legitimate governmental interests. *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). "The expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *Opperman*, 428 U.S. at 367, 96 S.Ct. at 3096. As a result, when an inventory search is carried out "in accordance with *standard procedures* in the local police department, [it] ... tend[s] to ensure that the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function." *Id.* at 375, 96 S.Ct. at 3100.

██ A review of the facts and circumstances of this case supports the district court's finding that the search of the trunk and the subsequent seizure of the contraband was reasonable and comported with the fourth amendment. Oliverio conducted the inventory search pursuant to Illinois State Police procedure DST/ENF 13 which mandates that officers inventory all vehicles that are to be towed. The procedure directs officers to inventory any items that might be of value to the owner.[1] Oliverio's initial decision to impound the vehicle and have it towed was entirely reasonable and is not challenged by the defendant. Since neither the driver nor the passenger had valid driver's licenses and the owner of the vehicle was not present, the decision to remove the Cadillac from the highway in accordance with established police policy "was an act of good judgment in the interest of public safety." *Griffin*, 729 F.2d at 480.

Having properly decided to inventory the car, we find that the scope of Oliverio's search was not unreasonable. Established Illinois State Police procedure directs officers to inventory any items that might be of value to the owner. When asked what was in the trunk of the vehicle, Fernando Velarde told Officer Oliverio that the trunk contained "luggage." From this statement Oliverio had reason to believe that the trunk contained valuables. After coming across the key to the trunk in the open ashtray in the passenger compartment, Oliverio opened the trunk in order to inventory its contents. Oliverio's decision to conduct an inventory search of the trunk served to protect the contents from damage, theft or vandalism while in the custody of the Illinois State Police, to protect the Illinois State Police and the towing service against claims of lost or stolen property, and to protect himself and other officers from potentially dangerous instrumentalities. Under the facts of this case, any claim of privacy is outweighed by the substantial governmental interests involved in inventorying the contents of the trunk. The search was conducted in accordance with standard operating procedure for the Illinois State Police and was reasonable.

██ As a final matter, Velarde contends that the search was conducted in bad faith as it was a pretext for an investigatory search. Such a claim is not supported by the record. An inventory search must follow local police procedures and cannot be used merely as a pretext for an investigation. *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). The search here followed a lawful arrest and was conducted in accordance with established police policy. Removing the car from the roadway served to protect Velarde's property and was part of the

---

**1.** Velarde attacks the validity of this policy claiming that it fails to provide sufficient guidance to officers as to what parts of a vehicle may be searched during an inventory search. We have previously rejected such a challenge to a similar state police policy based on the finding that *Opperman* requires no such formal guidelines or regulations concerning the permissible

scope of an inventory search. *See Griffin*, 729 F.2d at 475. Rather, the scope of an inventory search is governed by the reasonableness requirement of the fourth amendment, taking into consideration the facts and circumstances of each case and the rationales for permitting inventory searches as identified in *Opperman*.

officer's " 'community caretaking function[ ], totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *Griffin,* 729 F.2d at 480 (quoting *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973)). In conducting the inventory search Oliverio did nothing which was improper under the fourth amendment or contravened the inventory procedure of the Illinois State Police. In sum, we are unpersuaded that the inventory search in this case was a mere pretext for an investigatory search.

### III.

The decision of the district court denying the motion to suppress is AFFIRMED.