**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Susan J. KORDOSKY,
Defendant–Appellant.**

**No. 88–3333.**

United States Court of Appeals,
Seventh Circuit.

Jan. 8, 1991.

John W. Vaudreuil, Asst. U.S. Atty., Office of U.S. Atty., Madison, Wis., for plaintiff-appellee.

Alan G. Habermehl, Kalal & Habermehl, Madison, Wis., for defendant-appellant.

Before BAUER, Chief Judge,
EASTERBROOK, Circuit Judge, and
WILL, Senior District Judge.*

ON REMAND FROM THE SUPREME COURT OF
THE UNITED STATES

BAUER, Chief Judge.

This case is before us for the third time. The issue remains whether the district court should have suppressed evidence seized from Ms. Kordosky's car pursuant to an inventory search. In our first opinion in this case, *United States v. Kordosky*, 878 F.2d 991 (7th Cir.1990), we affirmed the district court's holding that the inventory search was lawful because it was conducted in accordance with established police procedures. *See Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The Supreme Court vacated and remanded that decision, —— U.S. ——, 110 S.Ct. 1943, 109 L.Ed.2d 306 (1990), and directed us to reconsider the issue in light of *Florida v. Wells*, —— U.S. ——, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

In *Wells*, the Court affirmed the Florida Supreme Court's determination that certain evidence seized by the Florida Highway Patrol during an inventory search should have been suppressed. The search included the opening of a suitcase locked in the trunk, but the Patrol had "no policy whatsoever with respect to the opening of closed containers encountered during an inventory search.... [A]bsent such a policy, the instant search was not sufficiently

* The Hon. Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

regulated to satisfy the Fourth Amendment." 110 S.Ct. at 1635.

In the instant case, the evidence adduced at the original suppression hearing was that Detective Allen Rickey followed "his standard practice" in inventorying Kordosky's car, which was seized for potential forfeiture because drug paraphernalia (e.g., a free-base pipe, a test tube, straws and cotton balls) was found in the passenger compartment, and one-sixteenth of an ounce of cocaine was found in Kordosky's purse. The resulting inventory search uncovered, in a locked compartment in a sidewall of the trunk, a brown paper bag containing $2,970 in cash and 107 grams of cocaine. The magistrate found the evidence that Rickey followed "his standard practice" sufficient to establish that the inventory search was conducted pursuant to official procedures. The district court adopted this finding and, because we found no clear error, we affirmed. *Kordosky*, 878 F.2d at 993. After the Supreme Court's remand, we looked at this issue again in light of *Wells*, and we noted that there was no direct, specific evidence as to the whether Detective Rickey's "standard practice" constituted the official policy of the police department for which he was working. Most importantly, there was no evidence as to whether the official policy (if one existed) called for the opening of locked compartments in Kordosky's vehicle. Therefore, we remanded to the district court for the limited purpose of conducting a hearing to take evidence as to the existence and parameters of an official departmental policy regarding inventory searches. (*United States v. Kordosky*, 909 F.2d 219, 221 (7th Cir.1990)).

The district court conducted the requested hearing on September 21, 1990. Two witnesses testified for the government: Detective Rickey and Detective Richard Pharo. Both Pharo and Rickey, although they are employed by the Madison, Wisconsin Police Department, are and were at the time of the events in question assigned to the Inter–County Narcotics and Vice Unit, commonly called the "Metro Narcotics Unit," a specialized unit made up of officers temporarily assigned from the Madison Police Department, the University of Wisconsin Police Department, and the Dane County Sheriff's Department. Pharo, who supervised the investigation and arrest of Kordosky and ordered the search of her car, was first assigned to the Unit in 1981 and returned in 1986 for his current stint as a detective. He testified that, from his experience, new officers assigned to the Unit learn Unit policies by being trained by senior Unit officers as to "the procedures that have been followed throughout the years by the Unit." Apparently, the Unit has no written list of procedures and/or policies. Pharo testified further that, since at least 1981, it has been Unit policy to inventory any vehicle that has been seized for potential forfeiture, which inventory must include the opening of any locked or unlocked containers found within the vehicle in order to list their contents. Detective Rickey, who actually conducted the inventory of Kordosky's car, was also first assigned to the Unit in 1981. Like Pharo, Rickey was reassigned to the Unit about five years ago as a detective. His testimony concerning the training of Unit officers and the specifics of Unit policy regarding inventories was essentially identical to Pharo's.

At the hearing, Kordosky's counsel cross-examined the detectives concerning the rules contained within the Madison Police Department's Manual of Policy, Regulations, and Procedures. Neither of the detectives professed any great familiarity with the Manual, which, according to both, is "continually changing." Further, Detective Pharo testified that the rules in the Madison Manual did not in any event apply to officers assigned to the Metro Narcotics Unit, which had its own rules and policies. The record reveals that it was the intention of Kordosky's counsel to show that, under *Wells*, the rule contained within the Madison Manual concerning inventory searches insufficiently cabined the discretion of officers conducting the searches. Apparently, the rule proffered by Kordosky (the parties assumed, *arguendo*, that the proffered rule was effective at the time of the inventory of Kordosky's car) does not speak in

absolute terms as to what Madison police officers must do in every inventory or never do in any inventory, but rather speaks in terms of what officers may do when conducting an inventory.

Based on the evidence adduced at the hearing, the district court found that the Unit had its own policies and procedures that "may or may not correspond to the policies of" the Police Departments from which Unit officers are drawn. The court then found that the Unit had an official, unwritten, standard policy that directed Unit officers to conduct an inventory search of all seized vehicles, to list all items in the vehicles on an inventory sheet, and to open any and all closed containers found within the vehicles. We accept these findings, and therefore hold again that the inventory search that Detective Pharo ordered and Detective Rickey performed was conducted in accordance with the fourth amendment. The Metro Unit had a specific, standard policy that called for an inventory search of every vehicle seized for potential forfeiture, as was Kordosky's. The standard practice called for the opening of all locked compartments, such as the one found in Kordosky's trunk, and closed containers, such as the paper bag found therein, in order to list all items found in the vehicle. Thus, the concerns voiced by the Court in *Wells* are not present here. Although the policy was unwritten, nothing in *Wells, Bertine* or the remainder of the cases in this area require the policy to be reduced to writing.

As to Kordosky's argument that the policy contained in the Madison Manual affords officers too much discretion, even assuming: 1) that the proffered policy was effective on the date in question, 2) that despite testimony to the contrary it applied to officers assigned to the Metro Unit from the Madison Police Department, and 3) that the policy says what Kordosky claims it does (i.e., that officers "may" in certain circumstances open closed containers), the argument nonetheless fails. The Court in *Wells* spoke explicitly to this point:

But in forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical "all or nothing" fashion.... A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.

110 S.Ct. at 1635 (quotation and citations omitted).

For these reasons, we hereby re-affirm the district court's order denying Kordosky's motion to suppress the evidence found in the inventory search.[1]

So Ordered.

---

1. We leave undisturbed our original holding rejecting Kordosky's claim of pretextual arrest. *See Kordosky,* 878 F.2d at 992–93. That holding is not implicated by *Wells.*