**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Westley WILSON,
Defendant–Appellant.**

**No. 90–1578.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1990.

Decided July 31, 1991.

Robert Haida, Asst. U.S. Atty., Criminal Div., East St. Louis, Ill., for United States.

Barry Levenstam, Jerold S. Solovy, Ellen R. Kordik, Jenner & Block, Chicago, Ill., for John W. Wilson.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The defendant-appellant, John Westley Wilson, appeals his conviction and sentence for possession with intent to distribute cocaine, and the unlawful use or carrying of a firearm during and in relation to a drug trafficking crime. Affirm.

## I. FACTS AND PROCEEDINGS BELOW

On August 25, 1989, a grand jury returned a two-count indictment against the defendant Wilson. Count One charged Wilson with violating 21 U.S.C. § 841(a)(1) "possess[ing] with intent to distribute approximately 260 grams of a substance containing cocaine ...";[1] Count Two charged the defendant with violating 18 U.S.C. § 924(c)(1) by using and carrying a firearm "during and in relation to a drug trafficking crime ...".[2]

On October 27, 1989, the defendant filed a motion to suppress the evidence obtained during the search of his vehicle and to suppress any statements made after arrest, alleging that the search was conducted without either a warrant or probable cause, in violation of the Fourth Amendment. The district court denied the defendant's motion to suppress on the ruling that (1) the search was an inventory search, and thus excepted from the requirements of the Fourth Amendment; and (2) the defendant's statements were lawfully obtained, pursuant to the legal inventory search and a proper Miranda warning.

On November 27, 1989, the defendant went to trial on the charges of drug traf-

---

1. 21 U.S.C. § 841(a)(1) makes it unlawful "for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."

2. 18 U.S.C. § 924(c)(1) provides that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...."

ficking, and unlawful use or carrying of a firearm during and in relation to a drug trafficking crime. At trial, Illinois State Patrol Trooper Thomas Oliverio testified that at approximately 2:00 p.m. on August 19, 1989, he stopped a white Nissan driven by the defendant while patrolling I–57 in Marion County, Illinois, as a vehicle with only one Illinois license plate, thus in violation of Illinois law. Trooper Oliverio further testified that after a routine check of the defendant's driver's license, he was advised that there was an outstanding arrest warrant against the defendant for battery. Officer Oliverio placed the defendant under arrest and temporarily confined him in his squad car.

At this time, Illinois State Trooper Greg Miller, who had arrived earlier to provide assistance to his fellow officer, began to inventory the contents of the vehicle pursuant to the dictates of Illinois State Police Tow–In Policy and Procedure. Officer Oliverio testified that departmental policy required an inventory of the contents of all towed vehicles. After Trooper Miller finished inspecting the passenger compartment, State Patrol Officer Oliverio joined him in his inventory of the vehicle's trunk while the defendant remained in the front seat of Oliverio's squad car. Officer Miller began to inventory the contents of the trunk, and after removing a Coleman lantern, the officers observed a light plastic bag with a green design. Officer Oliverio testified that Miller opened the bag and removed a pistol and fifteen rounds of ammunition in the magazine.[3] Directly underneath this bag, Officer Miller found a blue duffel bag. He handed the duffel bag to Oliverio. Oliverio testified that its contents included an Ohaus triple beam scale, a small black Derring scale, nine individually wrapped plastic bags of a white powdery substance containing cocaine, and numerous baggies.[4] Officer Miller completed a standardized Tow–In recovery sheet, listing the items of value inventoried during the search.

Upon discovering the evidence, Officer Oliverio returned to his squad car and advised the defendant of his Miranda rights, which the defendant orally waived, and then questioned him about the contents of the trunk. Officer Oliverio testified that the defendant admitted that he owned the gun and had been hired to deliver the cocaine to a third party in Murphysboro, Illinois.

The defendant went to trial and on November 28, 1989, the jury found him guilty of each of the counts set forth in the indictment. At sentencing, the district court imposed a forty-one month term of confinement on Count One, and a sixty-month sentence on Count Two to run consecutively to Count One, plus a fine of $100.

## II. ISSUES FOR REVIEW

On appeal, the defendant contends that (1) the district court erred in denying his motion to suppress the evidence obtained during the vehicle's search because the search was not conducted pursuant to a specific standardized policy regulating the opening of closed containers, and in failing to exclude his confession as the fruit of an illegal search;[5] and (2) the government

---

3. The weapon recovered was a nine millimeter automatic pistol. Officer Miller handed the loaded pistol to Officer Oliverio who removed the magazine. Just prior to returning the pistol to the plastic bag, Officer Oliverio held the gun up to show the defendant they had found a gun. Officer Oliverio testified that, "at that time the defendant was sitting in the car shaking his head in the negative."

4. Officer Oliverio also testified that he conducted a field test of a small quantity of one of the bags and determined that it was cocaine.

5. The defendant did not specifically raise the issue of whether the Illinois State Police had a standardized policy regulating the opening of closed containers before the trial court, but instead argued that the inventory search was conducted without either a warrant or probable cause. In its order denying the defendant's motion to suppress the evidence seized during the search of his car, the district court stated that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." The district court then held that the "defendant's contention that the search was warrantless and without probable cause is immaterial because the search was a proper inventory search made after seizure following an arrest based on an outstanding arrest warrant."

failed to prove beyond a reasonable doubt that the defendant used or carried the recovered firearm during and in relation to a drug trafficking offense.

## III. DISCUSSION

### A. Legality of The Inventory Search

The defendant argues on appeal that the officers' inventory search of his vehicle was not conducted pursuant to a specific, standardized policy/procedure regulating the opening of closed containers and therefore violated the Fourth Amendment. The defendant contends that since the Illinois State Police Tow–In Policy does not specifically mention the opening of closed containers, officers may not open containers found during an inventory search. Thus, the district court erred in denying the defendant's motion to suppress the evidence (the cocaine and the gun) found during Officer Miller's search of the defendant's trunk and bags. We will not reverse the trial court's decision on a motion to suppress evidence unless it is clearly erroneous. *United States v. Dunigan,* 884 F.2d 1010, 1014 (7th Cir.1989).

■ Inventory searches are a well-recognized exception to the Fourth Amendment's warrant requirements. *See Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Velarde,* 903 F.2d 1163 (7th Cir.1990); *Florida v. Wells,* —— U.S. ——, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *United States v. Kordosky,* 921 F.2d 722 (7th Cir.1991). Strong governmental interests and the diminished expectation of privacy in an automobile allow for searches conducted pursuant to inventory procedures because inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of loss, stolen, or vandalized property, and to guard

the police from danger." *Bertine,* 107 S.Ct. at 741 (1987).

Ever since the holding in *Bertine* that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment," the Supreme Court has delineated the constitutional parameters of a warrantless inventory search. *Id.* at 742. In its most recent decision, *Florida v. Wells,* —— U.S. ——, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990), the Court concluded that police may search the contents of a vehicle so long as "standardized criteria or established routine" exist regarding the opening of containers. The procedure should direct officers to inventory the contents of an impounded item and should not be a disguise "for general rummaging in order to discover incriminating evidence." *Id.* However, within the constraints of the policy/procedure, officers may exercise discretion in deciding whether or not to open a particular container:

> "But in forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in totally mechanical 'all or nothing' fashion ... A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment."

*Id.* (quotation and citations omitted).[6]

This court recently (prior to *Wells*) defined the permissible scope of a warrant-

---

6. Two Supreme Court decisions since *Wells* have sustained police searches of closed containers in automobiles although in factual circumstances different than ours. In *Florida v.*

*Jimeno,* —— U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (No. 90–622), the Court held that a general consent given by a criminal suspect to search his car included consent to search

less inventory search. A search is constitutional "if (1) the individual whose possession is to be searched has been lawfully arrested, ... and (2) the search satisfies the fourth amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures" *United States v. Velarde,* 903 F.2d 1163, 1165 (7th Cir.1990) (citation omitted). Since the validity of the defendant's arrest is not at issue here, we need only concern ourselves with the constitutionality of the inventory search.

The defendant contends that the Illinois State Police did not have any policy in effect at the time of his arrest regulating inventory searches of closed containers. Officer Oliverio testified at trial that he and Officer Miller searched the defendant's vehicle, and in contradiction of the defendant's assertion that the Illinois State Police did not have a policy in effect, established that the search was conducted in accordance with the Department's Tow–In Policy DST/ENF 13. The relevant portions of the policy referred to as Illinois State Police Tow–In Policy and Procedure at the time of the defendant's arrest are as follows:

### "Subsection 13–2: POLICY

The division of State Troopers will enforce all statutes which authorize the towing of vehicles (i.e., when the driver is incarcerated, evidence impounded, etc.).... A physical inventory shall be made of all vehicles towed, except when the vehicle is towed at the owner's request.

### Subsection 13–3: OBJECTIVES

(a) To safeguard in those cases where the actual owner or person in charge of such property is for any reason unable to provide ordinary care and protection for such property.

(b) To protect those persons who actually remove and take custody of vehicles/boats towed by authority of the Division of State Troopers.

(c) To protect the interest of the Division of State Troopers.

### Subsection 13–4(a)(2): PROCEDURE

*An examination and inventory of the contents of all vehicles/boats towed or held by authority of Division personnel shall be made by the officer who completes the Tow–In Recovery Report.* This examination and inventory shall be restricted to those areas where an owner or operator would ordinarily place or store property or equipment in the vehicle/boat; and would normally include front and rear seat areas, glove compartment, map case, sun visors, and trunk and engine compartments." (emphasis added.)

In addition, the Tow–In Report requires officers to "List Personal Effects/Parts Obviously Missing/Other Damage." Thus, it is clear that the Illinois State Police Tow–In Policy, coupled with the requirements of the Tow–In Report, sufficiently articulates the objectives of the policy and provides sufficient guidelines for police officers to enable them to conduct lawful inventory searches including the opening of closed containers.

Nevertheless, the defendant asserts that since the policy does not mention closed containers per se, it fails under *Wells.* While the Illinois policy may not use the buzz words "closed container" we are convinced that the term "contents" provides sufficient elucidation to satisfy the requirements of *Wells.* Here, Trooper Miller inventoried the contents of the entire vehicle, as required under the policy. He continued to follow the established procedure when searching the contents of the trunk.

The circumstances in this case represent the typical situation where it is essential to inventory the contents of an automobile

those containers that the police officers had reason to believe contained drugs. In *California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (No. 89–1690), the Court ruled that police may search a container in an automobile without a warrant when they have probable cause to believe that it holds contraband or evidence.

after a lawful arrest and seizure of its occupants including any containers located within a lawfully seized vehicle. The purpose of conducting the inventory search is to protect the owner's property while in the custody of the police from loss or destruction of items discovered within the vehicle including any containers from vandalism and theft as well as hopefully protecting the law enforcement officer and his or her department from any litigation. We believe that the Tow–In Policy's requirement to examine and inventory the contents of the vehicle, combined with the requirements in the Tow–In Report to "List Personal Effects/Parts Obviously Missing/Other Damage" clearly establishes the policy that closed containers can be opened.

Moreover, ours is a case distinguishable from *Wells*. In *Wells*, the Florida State Police admittedly had no standard policy governing inventory searches while the State of Illinois did, and furthermore there was no evidence that an inventory of the items found was even taken. *Id.* 110 S.Ct. at 1636 (Brennan, J. and Marshall, J. concurring). In contrast and unlike the facts in *Wells*, the Illinois State Police clearly had a published, standard policy for the conducting of inventory searches. The Tow–In Report reflects the personal and valuable items found by Officer Miller. In addition, the suitcase in *Wells* was locked and was pried opened at the direction of another trooper. The *Wells* Court also found that the inventory search was misused as a "fishing expedition" for evidence of drugs. *Id.* at 1636. In the case before the court, there is no evidence that the officers were using the inventory search as a pretext for a criminal investigation, for the search was conducted pursuant to the Illinois State Police Tow–In Policy DST/ENF. Thus our case is factually distinguishable from *Wells*.

Finally, the search was reasonable in light of our decision in *Velarde*, where we held that in evaluating the reasonableness of an inventory search, the court must weigh "the intrusion on the individual's fourth amendment rights against the promotion of legitimate governmental interest." *Velarde*, 903 F.2d at 1166 (citing *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). We further found that generally, "when an inventory search is carried out in accordance with standard procedures in the local police department, [it] ... tend[s] to ensure that the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function." *Id.* (quotation omitted). In *Velarde*, we concluded that Officer Oliverio's search of a trunk which revealed bags containing cocaine was reasonable because it was conducted pursuant to Illinois State Police Procedure DST/ENF 13 which directs officers to search a defendant's impounded vehicle and inventory all items of value. In addition, we found and continue to believe that it was and is reasonable for an officer to believe that an individual will in all probability store his valuables in his trunk. Thus, the district court properly denied the defendant's motion to suppress the lawfully seized evidence.[7]

■ The defendant also asserts that his confession should have been excluded because it was the "fruit" of an illegal search. We disagree, because the search was conducted in accordance with the specific standardized policy of the Illinois State Police Tow–In Policy regulating inventory searches (a policy satisfying the mandates of *Wells*) and since the defendant has not otherwise contested the validity of his arrest, the district court did not commit error in admitting the defendant's admissions regarding the ownership of the gun, the transportation of the cocaine, and the drug transfer arrangements.

### B. Sufficiency Of The Evidence

■ The defendant also argues the government failed to prove beyond a rea-

---

7. This court recently held that an unwritten standard practice by police officers of opening all locked compartments and closed containers in an automobile during the course of an inventory search satisfies the requirements of *Wells*. *United States v. Kordosky*, 921 F.2d 722, 724 (7th Cir.1991). Since the suppression hearing and the trial in *Kordosky* occurred prior to the decision in *Wells*, no testimony was elicited as to whether the officers were guided by an unwritten policy regarding the opening of closed containers.

sonable doubt that he "used" or "carried" a firearm in violation of 18 U.S.C. § 924(c). This section imposes additional sanctions against an individual who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm[.] [That person] shall, in addition to the punishment for such ... drug trafficking crime be sentenced to imprisonment for five years...." 18 U.S.C. § 924(c).

In challenging the sufficiency of the government's evidence, the defendant confronts a heavy burden for we review "the evidence in the light most favorable to the government, [in order to determine whether] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Edun*, 890 F.2d 983, 986 (7th Cir.1989). (quotation omitted.)

As this court noted in *Edun*, when interpreting § 924(c), we should look to the "plain language employed by Congress." *Id.* (quotation omitted). The words of the statute should be interpreted as they are "ordinarily and commonly understood." *Id.* (quotation omitted.) In order to convict a defendant under § 924(c), the government must prove beyond a reasonable doubt that the defendant either "used" or "carried" the firearm "in relation" to the drug trafficking offense with which he is charged. The defendant contends that the government's evidence failed to establish any of these elements.

### 1. Using

Of these two elements, we have interpreted "using" more broadly. This court has found "using" to "include[ ] the possession of a firearm which in any manner facilitates the execution of a felony." *United States v. Ocampo*, 890 F.2d 1363, 1371 (7th Cir.1989) (citation omitted). In addition, we have previously noted that the nature of the illegal drug business encourages the possession of weapons by its participants. *Id.* A weapon "provid[es] the defendant with security and confidence, facilitat[ing] a narcotics transaction." *Id.* (quotation omitted).

The defendant argues that since the gun was locked in the trunk, he failed to "possess" the gun in order to "facilitate" the drug exchange. He urges us to find that the gun was simply one of the many possessions he was moving back to school. We cannot accept this tenuous proposition.

Although the gun was locked in the trunk at the time Trooper Oliverio stopped the defendant, this is not the crucial moment at which an evaluation of the element "using" should be made. Instead, we will find that a defendant intended to use the firearm in facilitation of a drug related crime "if it [is] strategically located so as to be quickly and easily available for use during a *drug transaction*...." *United States v. Whitley*, 905 F.2d 163, 166 (7th Cir.1990) (quotation omitted) (emphasis added). The defendant's gun was in just such a position: It was strategically located directly on top of the bag containing the cocaine and the defendant knew where the gun was and it was loaded and readily accessible for use if necessary should any problems arise during the drug transaction. "Lack of an opportunity to brandish or shoot his weapon did not mean that [the defendant] did not 'use' the gun; nor does the fortuitous absence of a threatening occasion for [the defendant] to sally forth with his arsenal rescue him from culpability under the statute." *United States v. Vasquez*, 909 F.2d 235, 239 (7th Cir.1990) (citations omitted). Based on this evidence, the jury could reasonably infer that the defendant "used" this firearm in violation of § 924(c).

### 2. Carrying

We have already concluded that the government's evidence clearly established the "using" element of this section. Thus, whether the government's evidence demonstrated that the defendant was "carrying" the firearm in violation of § 924(c) need not be addressed because § 924(c) requires only that the government establish that the defendant either "used" or "carried" the firearm.

### 3. During And In Relation To

 Finally, the defendant argues that the government failed to prove that the defendant's possession of the gun was related to the defendant's drug offense.

The addition of the "in relation to" language to § 924(c) in 1984 was not meant to restrict the interpretation of the statute, "but rather was intended to make clear ... that a person could not be prosecuted for inadvertently carrying a firearm in an obviously unrelated crime." *Ocampo*, 890 F.2d at 1371 (1989). Thus, the government must prove " 'some relation or connection between the underlying criminal act and the use or possession of the firearm.' " *United States v. Rosado*, 866 F.2d 967, 970 (7th Cir.1990) (quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985)), (*cert. denied* 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987)). The government's evidence that the defendant's gun was strategically placed on top of the bag containing the cocaine clearly establishes the necessary relationship between the defendant's gun and the drug trafficking offense for purposes of § 924(c). Thus, the jury could reasonably infer that the presence of the defendant's gun directly on top of the bag containing the cocaine was linked to his drug trafficking participation in light of the fact that he was on his way to deliver the drugs.

In sum, the government's evidence established beyond a reasonable doubt that the defendant "used" his pistol in the charged drug trafficking offense, thus violating § 924(c).

### IV. CONCLUSION

The decision of the district court is

AFFIRMED.