61 F.3d 906
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joe R. HENDERSON, Jr., Defendant-Appellant.
 No. 94-3624.
 United States Court of Appeals, Seventh Circuit.
 Argued June 13, 1995.
Decided July 20, 1995.
 
 Before Posner, Chief Judge, and Cummings and Ripple, Circuit Judges.
 
 ORDER
 
 1
 Joe R. Henderson, Jr., was arrested for driving a motor vehicle without a license. During an inventory search of the car, police discovered a handgun in the trunk. Henderson was subsequently charged and convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). On appeal, Henderson argues (a) the district court erred by refusing to suppress the handgun as fruit from an illegal search, and (b) the evidence was insufficient to show that Henderson knowingly possessed the handgun. We affirm.
 
 I. FACTS
 
 2
 On June 12, 1993, Police Officer Will Wilson observed a 1972 Pontiac convertible being driven without a light over the license plate as required by Indiana law. Wilson drove alongside the vehicle and recognized by sight the driver, Henderson. Recalling that Henderson's driver's license had been suspended, Wilson pulled Henderson over for these suspected traffic violations and observed Henderson lean toward the passenger door several times, disappearing from Wilson's sight, and then straighten up again. Officer Tom Shaffer arrived at the scene to back up Wilson.
 
 
 3
 Wilson asked for Henderson's license and performed a pat-down search. Investigations confirmed that Henderson did not have a driver's license and that his learner's permit had been suspended, and Wilson arrested Henderson for driving without a license. Because Henderson was the only one in the car, Wilson informed him that the car would have to be towed and that an inventory search would be necessary. Wilson searched the passenger compartment of the car and asked Henderson for the key to the trunk. Henderson told the police that he did not have the trunk key because the car recently had been repainted and new locks had been installed.
 
 
 4
 Wilson then searched Henderson's person and discovered, lodged between Henderson's penis and testicles, the trunk key on a key ring. Henderson told the police that the car belonged to his wife, and that anything found in the car did not belong to him. Shaffer took the key, opened the trunk, and discovered a .45 caliber handgun next to the stereo speaker. Wilson testified at the suppression hearing that after he told Shaffer, "There is a gun," Henderson, who had his back to the car, said, "That is my wife's gun." Tr. 11. The officers speculated between themselves the caliber of the handgun, and Henderson volunteered that it was a .45 caliber, and later identified the type of bullets as bird shot bullets.
 
 
 5
 Henderson objected to the police towing the car because he had some extensive suspension work done to it. A friend of Henderson's stopped at the scene and agreed to contact Henderson's wife, Tammi Lewis, who subsequently moved the car. If Lewis had not arrived, Wilson testified that he was prepared to tow the car. Henderson was arrested for being a felon in possession of a firearm.
 
 
 6
 Henderson moved to suppress the handgun claiming that the inventory search was a pretext for a general criminal investigation. The district court found otherwise, and, following a jury trial, Henderson was convicted. The district court sentenced him to 50 months imprisonment, 3 years supervised release, and ordered him to pay a special assessment of $50.
 
 II. ANALYSIS
 I. Suppression of the Handgun
 
 7
 We review the district court's denial of a motion to suppress evidence for clear error, considering the testimony introduced at the pre-trial suppression hearing and at the trial. United States v. Woody, No. 94-1387 at * 18 (7th Cir. May 5, 1995); United States v. James, 40 F.3d 850, 874 (7th Cir. 1994), cert. denied, Williams v. United States, 115 S. Ct. 948 (1995), and cert. denied, Allison v. United States, 115 S. Ct. 1160 (1995). Because the resolution of a motion to suppress evidence is highly fact-specific, we "must give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." James, 40 F.3d at 874. A finding is clearly erroneous when, although there is evidence to support it, based upon the entire record the court is left with the definite and firm conviction that a mistake has been made. United States v. Willis, 37 F.3d 313, 315 (7th Cir. 1994).
 
 
 8
 There are two searches at issue: the search of Henderson's person, and the search of the trunk. After Wilson arrested Henderson, Wilson was allowed to search Henderson's person to prevent harm befalling the officers. United States v. Rodriguez, 995 F.2d 776, 778 (7th Cir), cert. denied, 114 S. Ct. 648 (1993); see generally 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment Sec. 5.2 (2d ed. 1987). The search of Henderson revealed the key to the trunk.
 
 
 9
 Henderson cites in his brief several dated cases from various state jurisdictions, seemingly for the proposition that the search was illegal because it was not necessary to a traffic violation stop. See State v. Curtis, 190 N.W.2d 631 (Minn. 1971); State v. O'Neal, 444 P.2d 951 (1968); Barnes v. State, 130 N.W.2d 264 (Wis. 1964). Curtis and Barnes involved defective taillight and brakelight violations and are distinguishable because minor traffic violations generally do not involve a custodial arrest and therefore a search was not necessary. In O'Neal, the officers asked for the defendant's wallet, which the court found was an illegal search because the papers in the wallet could not pose a bodily threat to the officer's safety. Here the officers were allowed to perform a pat-down search after they stopped Henderson to ensure their own safety. See Terry v. Ohio, 392 U.S. 1, 26, 88 S. Ct. 1868, 1882 (1968) (police may conduct a warrantless protective search for the discovery of weapons); see also Minnesota v. Dickerson, 113 S. Ct. 2130, 2137 (1993) (contraband which did not feel like a weapon discovered during pat-down search admissible). Furthermore, the officers arrested Henderson for driving without a license. The full body search then was authorized pursuant to a custodial arrest, and not a Terry stop. See Woody, supra at * 18 (reasonable for officers to search for weapons when effecting a custodial arrest).
 
 
 10
 The search of the trunk was done pursuant to the inventory search of the car. Inventory searches are a well-recognized exception to the warrant requirement of the Fourth Amendment. Colorado v. Bertine, 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987); Illinois v. Lafayette, 462 U.S. 640, 643, 103 S. Ct. 2605, 2608 (1983). Inventory searches are allowed to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. Florida v. Wells, 495 U.S. 1, 2, 110 S. Ct. 1632, 1635 (1990) (citing South Dakota v. Opperman, 428 U.S. 364, 369, 96 S. Ct. 3092, 3097 (1976)). However, inventory searches "must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory." Florida, 495 U.S. at 2, 110 S. Ct. at 1635 (citing Bertine, 479 U.S. at 376, 107 S. Ct. at 743). To find the inventory search unconstitutional, the officers must have acted out of bad faith, for the sole purpose of investigation. Bertine, 479 U.S. at 372-73, 107 S. Ct. at 742-43.
 
 
 11
 Henderson contends that the inventory search was pretextual because Wilson did not produce the inventory report at trial, and the car was not impounded or towed so that the inventory search was not required. Henderson's first argument, that an inventory report was never produced, does not prove that the inventory search was pretextual. Officer Wilson testified that he filled out an inventory report but lost it in a recent residential move.
 
 
 12
 Henderson's second argument, that the car was not towed, revises the time when the officers knew if the car would be towed. We must analyze whether at the time of the inventory search Officer Wilson reasonably believed that the car would be towed. The later appearances of Henderson's friend and wife are irrelevant to this consideration. Indiana Code Sec. 9-21-16-3 provides for an automobile standing upon a highway and left unattended to be impounded. Public highway is defined broadly to include a street, alley or road. Ind. Code Sec. 9-25-2-4. Henderson was the only one in the car at the time he was arrested and was ineligible to move the car for want of a driver's license and because he was under arrest. Because none present could move the car, the car was unattended. See United States v. Velarde, 903 F.2d 1163, 1166-76 (7th Cir. 1990) (impoundment reasonable where neither occupant had a valid license and owner not present); Moore v. State, 637 N.E.2d 816, 819 (Ind. App. 1994) (car unattended because driver arrested), cert. denied, 115 S. Ct. 1132 (1995).
 
 
 13
 Henderson's brief cited Reed v. State, 395 S.E.2d 294 (Ga. Ct. App. 1990), to support his argument that the inventory search was not necessary. Reed is distinguishable because in Reed a passenger in the car could have moved the car and therefore the car was not unattended after the arrest. Had Henderson's friend come earlier, then perhaps this case would resemble Reed.
 
 II. Sufficiency of the Evidence
 
 14
 Henderson next argues that the evidence was insufficient to show that he knowingly possessed the handgun.
 
 
 15
 A defendant seeking to overturn a jury's verdict based on the sufficiency of the evidence "must overcome a very high hurdle." United States v. Billops, 43 F.3d 281, 284 (7th Cir. 1994), cert. denied, 115 S. Ct. 1389 1995). We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). We will reverse "only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." United States v. Garcia, 35 F.3d 1125, 1128 (7th Cir. 1994) (citation omitted). "When the trier of fact is a jury, we must 'defer to reasonable inferences drawn by the jury and the weight it gave to the evidence.' "United States v. Hill, 40 F.3d 164, 166- 67 (7th Cir. 1994), cert. denied, 1995 U.S. LEXIS 2195 (U.S. Mar. 20, 1995) (quoting United States v. Beverly, 913 F.2d 337, 360 (7th Cir. 1990), cert. denied, 498 U.S. 1052, 111 S. Ct. 766, 112 L. Ed. 2d 786 (1991)). The deference we accord to the jury's findings is inviolable; "[w]e will not reweigh the evidence or reevaluate the credibility of witnesses." United States v. Kellum, 42 F.3d 1087, 1091 (7th Cir. 1994).
 
 
 16
 Woody, supra at * 9; see also James, 40 F.3d at 860. To obtain a conviction under Sec. 922(g)(1), the government must prove beyond a reasonable doubt that Henderson knowingly possessed a firearm that had travelled in interstate commerce, and had a previous felony conviction. The parties agree that the weapon passed through interstate commerce and that Henderson has a previous felony conviction. The only issue is whether he knowingly possessed the weapon.
 
 
 17
 Proof that Henderson knowingly possessed the handgun may be established by either direct or circumstantial evidence. United States v. Williams, 33 F.3d 876, 878 n.1 (7th Cir. 1994), cert. denied, 115 S. Ct. 1383 (1995); United States v. Garrett, 903 F.2d 1105, 1110 n.4 (7th Cir. 1990), cert. denied, 498 U.S. 905 (1990). The record demonstrates that Henderson first denied having a key to the trunk, the trunk key was found hidden between his penis and testicles, Henderson protested ownership of anything in the car before the trunk was opened, and Henderson identified the handgun as a .45 caliber and the bullets as bird shot. It was reasonable for the jury to believe that Henderson tried to prevent the opening of the trunk and attempted to distance himself from the car because he knew that the handgun was in the trunk. See Woody, supra at * 10 (court will not re-weigh reasonable inferences drawn by jury or weight jury gave to the evidence); see also Garrett, 903 F.2d at 1111 (defendant's use of key to gain entry to vehicle with weapon on the floor sufficiently demonstrate power and intent to exercise dominion and control of weapon).
 
 
 18
 AFFIRMED.