# UNITED STATES of America, Plaintiff–Appellee,

v.

## Alvaro LOZANO, Defendant–Appellant.

### No. 98–2780.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1998.

Decided March 29, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied June 9, 1999.

K. Tate Chambers, Office of the United States Attorney, Peoria, IL; Timothy A. Bass (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Thomas W. Patton (argued), Office of the Federal Public Defender, Springfield, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, BAUER, and MANION, Circuit Judges.

BAUER, Circuit Judge.

This case is a direct appeal by criminal defendant, Alvaro Lozano. The appeal arises from the district court's denial of Lozano's motion to suppress marijuana that was found in his truck following his arrest for traffic violations. Following a conditional guilty plea, Lozano was found guilty of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Lozano was sentenced to six months of imprisonment, followed by three years of supervised release. We find no merit in Lozano's appeal.

## I. Background

On January 26, 1998, Peoria police officer John Krider was on patrol when he observed a pickup truck, driven by Lozano, making an illegal U-turn Officer Krider stopped the truck and requested Lozano's driver's license and proof of insurance. Lozano informed Krider that there was no insurance on the truck. Krider returned to his vehicle and ran a computer check on Lozano's license, which revealed that his license had been revoked and that the truck's California license plate had expired in 1996, even though the plate displayed a purportedly valid renewal sticker.

Officer Krider decided to arrest Lozano and called a backup officer. After the backup officer arrived, Krider arrested Lozano and placed him in the back seat of the squad car. Krider then approached the female passenger in Lozano's truck and placed her in the back seat of the backup officer's squad car. Krider ran a check on the female's license and found that it too had expired.

Because Lozano did not present proof of insurance and neither Lozano nor his female passenger had a valid driver's license, officer Krider arranged for the truck to be towed from the highway. Prior to the tow, however, Krider began an inventory of the truck. As he conducted the inventory, Krider filled out the pre-printed "Peoria Police/Vehicle Tow Report" inventory sheet, which memorializes the condition of a vehicle and the contents found within the vehicle, prior to the tow. In addition to the pre-printed vehicle checklists on the inventory sheet, blank space is provided to allow officers to make notations or provide descriptions of items found within the vehicle during the inventory process.

First, officer Krider inventoried the cab portion of Lozano's truck. After looking in the cab, he walked toward the back or bed of the vehicle. The bed of the truck was covered by a "topper," which is a bed covering usually made of plastic or vinyl. The plastic topper on the truck had windows, which allowed him to see into the bed of the truck. Looking through the topper's windows, Krider saw five large duffle bags in the bed of the truck. He returned to his squad car and radioed for canine officer assistance.

Canine officer Roegge arrived and Krider instructed him to use the dog to assist in the inventory of the bed of the truck. While Krider filled out the automobile inventory paperwork, Roegge walked his canine around the truck. The dog became very excited when it came to the rear portion of the truck. Roegge opened the bed's topper and allowed the canine to jump up into the bed. Once in the bed, the canine "alerted" to one of the duffel bags. Roegge removed the duffel bag from the bed and unzipped it. The bag contained clothing and "several large bricks of gray duct-tape," which Roegge

believed to be some kind of narcotic. Roegge then removed the remaining duffel bags from the truck, placed them on the sidewalk, and let the canine conduct another sniff search. The canine "alerted" to another bag. Roegge opened the bag, which revealed more bricks covered with gray duct-tape. Roegge then put all five duffel bags back into the truck and called the vice unit.

Because both officers believed that the inventory search revealed what appeared to be a sizable amount of drugs, the truck was not taken to the tow yard, but instead, was taken to the Peoria Police Department, where it was turned over to the vice and narcotic divisions for further investigation. On final count, the duffel bags contained 42 packages, which amounted to 182.3 kilograms of marijuana. Soon thereafter, Lozano agreed to cooperate with the Government.

On February 4, 1998, a federal grand jury returned a single-count indictment charging Lozano with possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841. Subsequent to the indictment, Lozano filed a motion to suppress, arguing that: (1) the Peoria Police Department did not have a standard policy on its inventory of closed containers found within vehicles, and (2) even if the department did have such a policy, the officers did not follow that policy. On March 26, 1998, a federal district court held a hearing on Lozano's motion to suppress the evidence obtained in the inventory search. The district court denied the motion. Lozano then entered a conditional plea of guilty to the indictment and reserved the right to appeal the district court's order denying his motion to suppress. On July 10, 1998, Lozano filed his notice of appeal.

## II. Discussion

At issue in this appeal is whether the marijuana found in Lozano's truck following his arrest for traffic violations was obtained pursuant to a valid inventory search. More specifically, Lozano contends that the Peoria Police Department does not have well-established standard-ized criteria governing the opening of closed containers during inventory searches, and as a result, the arresting officers were allowed to conduct the inventory search of Lozano's truck with unfettered discretion, in violation of his Fourth Amendment protections.

In reviewing a district court's ruling on a motion to suppress, we review for clear error. *United States v. Velarde*, 903 F.2d 1163, 1164 (7th Cir.1990). It is well-settled in this court that a warrantless inventory search is constitutionally permissible if: (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search satisfies the Fourth Amendment standard of reasonableness, *i.e.*, it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *Id.* at 1165 (internal citations omitted).

Lozano does not argue that he was unlawfully arrested. Accordingly, we need direct our inquiry only towards the reasonableness of the inventory search.

Whether a search and seizure is reasonable within the fourth amendment depends on the facts and circumstances of each case. In determining the reasonableness of an inventory search, we must be careful to balance the intrusion on the individual's fourth amendment rights against the promotion of legitimate governmental interests. The expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. As a result, when an inventory search is carried out in accordance with *standard procedures* in the local police department, it tends to ensure that the intrusion is limited to the extent necessary to carry out the caretaking function.

*Id.* at 1166 (internal citations and quotations omitted; emphasis in original). Furthermore, in *United States v. Wilson*, we held that:

police may search the contents of a vehicle so long as standardized criteria or established routine exist regarding the opening of containers. The procedure should direct officers to inventory the contents of an impounded item and should not be a disguise for general rummaging in order to discover incriminating evidence. However, within the constraints of the policy/procedure, officers may exercise discretion in deciding whether or not to open a particular container. . . . A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.

938 F.2d 785, 788 (7th Cir.1991) (citing *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990)) (internal quotations omitted).

 The lack of a written policy, however, is not dispositive. *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir.1996). Evidence of a well-honed police department routine may be sufficient to establish the standard procedures of an inventory search. *Id.*; *see also United States v. Arango–Correa*, 851 F.2d 54, 59 (2nd Cir. 1988); *cf. Pembaur v. Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986) (an "official policy" need not be in writing to support liability under 42 U.S.C. § 1983).[1]

In the present case, the district court judge found that the inventory search was conducted pursuant to the Peoria Police Department's standard routine of opening all closed containers that might contain valuables and, therefore, was a valid inventory search. We agree with this conclusion. The record establishes that officer Krider followed the Peoria Police Department's practice of filling out the inventory tow sheet at the site of the vehicle impoundment. The record also shows that Krider discovered the five duffel bags in the bed of Lozano's truck during his inventory search. Krider then followed the department's policy of opening all closed containers within the car that could possibly contain valuable items. Krider further testified that he routinely opens closed containers that might contain valuable items to protect himself, the other officers involved, and the citizens being arrested. Officer Roegge corroborated Krider's testimony and we find no evidence to the contrary. Because we believe that the district court did not commit clear error in determining that the Peoria Police Department followed standard procedure while conducting an inventory search of Lozano's automobile, we affirm the district court's denial of Lozano's motion to suppress the evidence found within five duffel bags located in the bed of his truck. AF-FIRMED.

---

1. Although the lack of a written policy is not essential in establishing the existence of a standardized inventory procedure, we believe that the police department might better protect itself against future litigation if the "Peoria Police/Vehicle Tow Report[s]" provided greater specificity in listing the type and number of closed containers to be searched in the vehicle, where reasonable.