**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-5049**

UNITED STATES OF AMERICA,

                   Plaintiff - Appellee,

          v.

ARNELL JOHNSON,

                   Defendant - Appellant.

**No. 11-5050**

UNITED STATES OF AMERICA,

                   Plaintiff - Appellee,

          v.

VAUGHN BARKSDALE,

                   Defendant - Appellant.

Appeals from the United States District Court for the District of Maryland, at Greenbelt.  Roger W. Titus, District Judge. (8:10-cr-00447-RWT-2; 8:10-cv-00447-RWT-3)

Submitted:  June 22, 2012          Decided:  August 17, 2012

Before TRAXLER, Chief Judge, and SHEDD and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

Joseph J. Gigliotti, Sr., Riverdale, Maryland, for Appellant Vaughn Barksdale; Ron Earnest, LAW OFFICE OF RON EARNEST, Takoma Park, Maryland, for Appellant Arnell Johnson. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Arun G. Rao, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Arnell Johnson and Vaughn Barksdale appeal their convictions arising out of a bank robbery, asserting that the district court erred in denying their motions to suppress evidence obtained during an inventory search of the vehicle in which they were traveling. For the following reasons, we affirm.

I.

On June 29, 2010, Officer Philip Johnson of the Prince George's County Police Department ("PGPD") was observing traffic traveling on Riggs Road in Adelphi, Maryland, from his marked police cruiser. Officer Johnson observed a Toyota Solara operated by Barksdale fail to stop at a stop sign, and the officer then initiated a traffic stop of the Solara.

Officer Johnson parked his vehicle behind the Solara in a manner designed to protect himself and the Solara from the busy roadway. He then approached Barksdale and requested his driver's license and vehicle registration. Arnell Johnson and Lamar Pannell were passengers in the vehicle. Barksdale gave Officer Johnson his driver's license and a vehicle registration in the name of Dana Allison Hicks.

Officer Johnson returned to his cruiser to conduct a license check and discovered that Barksdale's license had been

3

suspended. He wrote traffic citations to Barksdale for failure to stop at a stop sign, driving with a suspended license, and driving without a license. Officer Johnson then returned to the Solara and asked Barksdale to exit. After performing a quick pat down of Barksdale to ensure that he had no weapons, Officer Johnson asked Barksdale to step to the front of his cruiser where he explained the citations and informed him that the vehicle would be impounded. Barksdale was not properly licensed, the registered owner was not present, and the vehicle presented a road hazard. Specifically, Officer Johnson testified that "[t]he vehicle impeded the flow of traffic. From where it was positioned, it actually stuck out in the roadway being a road hazard. So if left there on the scene, it could be struck by a vehicle." J.A. 89. Officer Johnson also requested the assistance of a second officer.

The PGPD General Order Manual provides for the immediate impoundment of vehicles "[p]arked or standing impeding the movement of traffic" or "[p]arked or standing unattended on any road, highway, alley, or parking lot in a manner constituting a threat to public safety." J.A. 154. The Manual contains a general checklist for impounding vehicles, including the directive that the officer record the vehicle identification number ("VIN") and "[i]nclude an inventory list." J.A. 151.

4

Prior to beginning the inventory search, Officer Johnson asked Barksdale if there was anything inside the vehicle that he should be concerned about, such as weapons or drugs. Barksdale replied that there was not. Officer Johnson then asked the two passengers to exit the vehicle, patted them down for safety, and asked them to sit on the curb with Barksdale. The men were not handcuffed or otherwise restrained prior to the search. Officer Johnson testified that it is consistent with PGPD policy for an inventory search to begin at the scene of a vehicle stop, before the vehicle is turned over to the towing company, and that the occupants of the vehicle are typically present while the search is conducted in order to safeguard against subsequent claims of missing property.

Officer Johnson began his inventory search by checking the glove compartment of the vehicle, where he found an identification card for Arnell Johnson. He then reached under the front passenger seat, where he discovered a loaded Smith & Wesson .357 Magnum revolver. Officer Johnson immediately drew his service weapon and ordered the men to lie on the ground. Barksdale complied, but Johnson and Pannell fled the scene. Officer Johnson's backup officer, who had by then arrived, handcuffed Barksdale while Officer Johnson alerted the police dispatcher of the situation.

5

While waiting for additional units to respond, Officer Johnson resumed the search of the vehicle. He discovered a backpack containing a sawed-off shotgun, $13,560 in wrapped U.S. currency, a wig with braids, latex gloves, two pairs of sunglasses, and a floppy blue hat. These items alerted the officers to a bank robbery that had taken place earlier that day in Montgomery County, Maryland. The PGPD contacted the Montgomery County Police Department, whose robbery units responded and took charge of the evidence, including the Solara. In the meantime, the PGPD officers, with the assistance of a K-9 team, located Pannell. Johnson escaped, but was apprehended several months later.

Johnson and Barksdale were subsequently indicted for armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d). Johnson was additionally indicted for using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Prior to trial, Johnson and Barksdale each moved to suppress the evidence obtained during the traffic stop, claiming that the search was conducted without a warrant or probable cause, in violation of their Fourth Amendment rights. At the conclusion of an evidentiary hearing, the district court held that the search was a valid inventory search and denied the motions. Both Johnson and Barksdale entered conditional pleas

6

of guilty, preserving their right to appeal the denial of their suppression motions.[*]

## II.

In considering an appeal from the denial of a suppression motion, we review a district court's findings of fact for clear error, and its legal conclusions de novo. See United States v. Matthews, 591 F.3d 230, 234 (4th Cir. 2009). We review the evidence in the light most favorable to the government. See id.

## A.

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." Maryland v. Dyson, 527 U.S. 465, 466 (1999) (per curiam). However, an exception to the warrant requirement arises when an inventory

---

[*] The government argues, as it did below, that Appellants lack standing to contest the validity of the search. With regard to Barksdale, the government argued that he was not an authorized user of the vehicle. With regard to Johnson, the government argued that he was a mere passenger in the vehicle and abandoned any privacy interest by fleeing the vehicle. The district court initially ruled that both Appellants lacked standing, but later indicated that Barksdale may have had standing based upon a police report summarizing an interview with Hicks, the registered owner of the vehicle. We assume for the purposes of this appeal that Appellants have standing to contest the validity of the search.

7

search is properly conducted. See South Dakota v. Opperman, 428 U.S. 364, 372 (1976); United States v. Banks, 482 F.3d 733, 738-39 (4th Cir. 2007). "Police officers frequently perform inventory searches when they impound vehicles or detain suspects." Matthews, 591 F.3d at 235. "Such searches 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" Id. (quoting Colorado v. Bertine, 479 U.S. 367, 372 (1987)); see also Whren v. United States, 517 U.S. 806, 811 n.1 (1996) ("An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage.").

To be valid, an inventory search must be "conducted according to standardized criteria, such as a uniform police department policy, and performed in good faith." Matthews, 591 F.3d at 235 (internal quotation marks and citations omitted). Such criteria "curtail the discretion of the searching officer so as to prevent searches from becoming 'a ruse for a general rummaging in order to discover incriminating evidence.'" Banks, 482 F.3d at 739 (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)). "[N]othing prohibits the discretion of police officers in making inventory searches so long as that discretion is based

8

on standard criteria and on the basis of something other than the suspicion of criminal activity." United States v. Ford, 986 F.2d 57, 60 (4th Cir. 1993).

B.

Appellants do not contest the validity of the traffic stop. However, they contend that the search was not a properly conducted inventory search, and was instead a warrantless search for incriminating evidence. The district court found that Officer Johnson acted in good faith when he made the decision to impound and search the vehicle, and that the search was performed in accordance with PGPD standardized criteria. The record provides sufficient evidence to support these findings.

The PGPD Manual provides for the immediate impoundment of vehicles that are "impeding the movement of traffic" or parked or standing unattended on a road "in a manner constituting a threat to public safety." J.A. 154. The Solara was parked on the side of a heavily-traveled road and was partially impeding traffic. Barksdale was operating the vehicle without a valid driver's license, and the registered owner of the vehicle was not present. See Ford, 986 F.2d at 60 (upholding validity of inventory search of vehicle obstructing traffic where driver had a suspended license). Hence, the vehicle was subject to immediate impoundment, even though the

9

driver had not been placed under arrest. See Opperman, 428 U.S. at 369 ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."); Matthews, 591 F.3d at 235 ("Police officers frequently perform inventory searches when they impound vehicles or detain suspects."). Contrary to Appellants' contention, Officer Johnson was not required to arrest Barksdale before conducting the search or contact the registered owner of the vehicle prior to impounding the vehicle, which was obstructing traffic in a busy roadway. Nor was Officer Johnson required to ascertain whether one of the passengers had a valid driver's license, where the registered owner was not present to give consent to such a third party. See United States v. Brown, 787 F.2d 929, 932-33 (4th Cir. 1986) (holding that police officer "could reasonably have impounded [defendant's] vehicle either because there was no known individual immediately available to take custody of the car, or because the car could have constituted a nuisance in the area in which it was parked").

We also reject Appellants' contention that Officer Johnson's search was not in accordance with the standardized PGPD criteria because he did not record the VIN or complete an inventory form or list. Officer Johnson's failure to complete these tasks is understandable given that his search was

10

unexpectedly and almost immediately interrupted by the discovery of the revolver under the front passenger seat, and by the flight of Pannell and Johnson. In fact, these events resulted in the vehicle not being impounded by Officer Johnson at all. The vehicle was instead turned over to the Montgomery County Police Department, which had jurisdiction over the bank robbery. In other words, the search began as a normal and appropriate inventory search during which incriminating evidence was found and two occupants of the vehicle fled. The occurrence of these events caused a disruption in the process and resulted in the assumption of responsibility for the vehicle being switched from one law enforcement agency to another, but it did not invalidate the inventory search or the discovery of the evidence.

Finally, there is nothing in the record to support Appellants' claim that Officer Johnson acted in bad faith and engaged in an inventory search as a ruse to conduct an investigatory search for incriminating evidence. As a result of the traffic stop, Officer Johnson was informed about Barksdale's prior offenses, but had no information regarding either passenger's criminal history. He conducted a brief pat down of the vehicle occupants for his own safety, prior to beginning the vehicle search, but did not restrain the men while he conducted the search. Officer Johnson testified that it is standard practice for inventory searches to occur at the scene before the

11

vehicle is turned over to the towing company, and for the vehicle occupants to remain present while the search is conducted, in order to safeguard against subsequent claims of missing property. This practice falls squarely within the purposes of inventory searches. See Bertine, 479 U.S. at 372; Matthews, 591 F.3d at 235. In sum, the record is devoid of evidence that Officer Johnson used the inventory search as a ruse to search for evidence of criminal activity and, on the contrary, the record supports the conclusion that Officer Johnson had no reason to believe that the search would yield such incriminating evidence.

III.

For the foregoing reasons, we hold that the district court did not err in concluding that the evidence was seized during a lawful inventory search, and we affirm the district court's order denying the suppression motions.

AFFIRMED

12